In re PLACID OIL COMPANY, Debtor.

**In re PLACID BUILDING AND SERVICE COMPANY, Debtor.**

**Bankruptcy Nos. 386–33419–A–11, 386–33420–A–11.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Sept. 30, 1988.

Henry W. Simon, Jr., Barbara Hoffman–Hill, Simon, Anisman, Doby, Wilson & Skillern, Dallas, Tex., for debtors, Placid Oil Co. and Placid Bldg. and Service Co.

R. Paul Wickes, Robert W. Jones, Debra D. McCullough, Thompson & Knight, Dallas, Tex., for First Republicbank Dallas, N.A., Agent Bank for Placid Bank Group.

William T. Neary, Dallas, Tex., U.S. trustee for the N.D. of Tex.

Grover Hartt, III, Linda C. Groves, Dept. of Justice. Dallas, Tex.

D. Michael Dalton, Ronald J. Restropo, Hutcheson & Grundy, Houston, Tex., for the Official Unsecured Creditors' Committee of Placid Oil Co.

Alan D. Sibarium, Law Offices of Alan D. Sibarium, Dallas, Tex., for Huddlestons.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAROLD C. ABRAMSON, Bankruptcy Judge.

Placid Oil Company ("Placid") and Placid Building and Service Company ("PBSC"),

debtors in possession in the above-captioned Chapter 11 cases ("Debtors"), and Placid International Oil, Ltd. ("PIOL"), Placid Refining Company ("PRC"), Placid Chemical Company ("PCC") and Placid Oil Company (United Kingdom) ("PUK") (Placid, PBSC, PIOL, PRC, PCC and PUK collectively, the "Proponents") have proposed and filed a Modified Fourth Amended Joint Plan of Reorganization on August 26, 1988, as amended and modified (including all exhibits thereto, the "Plan") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

A copy of the Plan and of the Supplement to Fourth Amended Disclosure Statement approved by the Court * on August 30, 1988 as a supplement to the Fourth Amended Disclosure Statement approved by the Court on March 1, 1988 (such disclosure statement, as supplemented, being hereinafter referred to as the "Disclosure Statement") was transmitted to all Holders of Claims and Interests. Hearings on the confirmation of the Plan commenced on September 26, 1988. The following parties-in-interest appeared by and through their counsel: Placid, PBSC, PIOL, PRC, PCC, PUK, NCNB, the Internal Revenue Service (the "IRS"), the Creditors Committee, Penrod Drilling Company, Enterprise Products Company, Wanda Petroleum Company, Services Equipment & Engineering, American International Underwriters Corporation, Tenneco Oil Company, Cooper Industries, Inc., Highland Insurance Company, Albert Huddleston as Next Friend, Mineral Management Service, Ensearch, Mellon Bank, N.A., Bank of Scotland, Security Pacific Bank, N.A., First Interstate Bank, N.A., Bank of Montreal, Marine Midland Bank, N.A., Wells Fargo Bank, N.A. and Bankers Trust Company.

Based on the record of the hearings and all the proceedings held before the Court in these Cases, and after due deliberation, and sufficient cause appearing therefor, this Court hereby makes the following Findings and Conclusions of Law all of which shall

be deemed to be incorporated into the Confirmation Order:

### Findings and Conclusions

A. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (G), (L) and (O).

B. *Notice.* Any Person required to receive notice of the hearings on the adequacy of the Disclosure Statement and confirmation of the Plan has received due, proper and adequate notice thereof. Any Person who requested a copy of any of the documents constituting exhibits to the Plan which were not transmitted to Holders of Claims and Interests with the balance of the Plan, and made such a request in the manner set forth in the Disclosure Statement, received a copy of such documents. All Persons having an interest, vested or contingent, in any Trust Estate, or their representatives, including Mary H. Huddleston and Albert D. Huddleston individually and as Next Friend for his minor children, have received a copy of the Plan and the Disclosure Statement and due and adequate notice of the Confirmation Hearing, which notice complied with Section 115.015 of the Texas Trust Code as well as Bankruptcy Rule 2002. In compliance with Local Rule 3017, the Proponents have mailed the Plan and notice of the confirmation hearings to the Persons on the master service lists for the Cases, which service lists include all Persons required to be included thereon in accordance with the Code and the Bankruptcy Rules. Each of the Trust Estates which are shareholders of Placid has acknowledged in writing its receipt of the materials mailed to it by the Proponents in connection with the Plan and the confirmation thereof.

C. *Code Compliance—Section 1129 (a)(1).* Counsel for each of the Debtors, the IRS, and the Creditors' Committee all believe that the Plan complies with the applicable provisions of the Code, and counsel for the Banks believe that the Plan complies with the applicable provisions of the Code as to the treatment of the Banks

---

* Capitalized terms not otherwise defined in these Findings of Fact and Conclusions of Law and the accompanying Order shall have the same meaning as in the Plan.

thereunder. No Person has made a valid objection to confirmation on the ground that the Plan does not comply with the applicable provisions of the Code. Based on the foregoing and on the record in these Cases, this Court concludes that the Plan complies with the applicable provisions of the Code.

D. *Proponent Compliance—Section 1129(a)(2).* The Proponents of the Plan have complied with the applicable provisions of the Code. The record in these Cases discloses that the Debtors have attempted in good faith to comply with the orders of the Court entered during the pendency of these Cases and that the Debtors have not violated any such orders. The Debtors and the Proponents have complied with the provisions of the orders of this Court entered in connection with the proposal, solicitation for acceptances of, and confirmation of the Plan.

E. *Proposed in Good Faith—Section 1129(a)(3).*

(i) The Plan has been proposed in good faith and not by any means forbidden by law. The Debtors originally proposed an outline for a plan of reorganization in a Memorandum required by the Court in June 1987. Since that time, the Debtors and the Proponents have filed and amended their proposed plan, and all interested parties have had ample opportunity to understand, discuss with the Debtors and the Proponents, and object (to the extent they deemed necessary) to the terms and conditions of the Plan.

(ii) The Proponents and each Person executing and delivering a Release, Consent, Beneficiaries' Acknowledgement, Initial Beneficiary Indemnity, Placid Indemnity, Subsequent Beneficiary Indemnity or Trust Estate Indemnity (each of such documents individually an "RCI Document" and collectively the "RCI Documents") in satisfaction of certain requirements of the Plan (each Person by or on behalf of whom an RCI Document has been signed individually a "Signing Party" and collectively the "Signing Parties") have been advised by counsel of their own choosing or have had the opportunity and were encouraged to consult with counsel of their own choosing in the formulation of the Plan and the negotiation, execution and delivery of the Plan, the Collateral Security Documents, the Disclosure Statement, the RCI Documents, the New Credit Agreement and all Plan Documents to which each of them is a party.

(iii) Each Proponent and Signing Party has made an independent decision to enter into the Plan Documents to which each is a party and (in the case of the Proponents) to propose the Plan, without any reliance on any representation, warranty, covenant, undertaking or agreement by or on behalf of any other Proponent or Signing Party, any Bank or any other Person. No representation, warranty, covenant, undertaking or agreement has been made by or on behalf of any Proponent, any Bank or any other Person to any other Proponent or any Signing Party in connection with the rights and obligations of such other Proponent or any Signing Party except as expressly set forth in the Plan and the Plan Documents. There are no representations, warranties, covenants, undertakings or agreements by or on behalf of any Proponent or Signing Party on the one hand, and any Bank, on the other, as to the Plan or the Plan Documents except as specifically provided therein.

(iv) Pursuant to the Plan and Plan Documents, and on the basis of the record in these Cases, no Bank has any fiduciary or other special obligation of trust and confidence to any Debtor, any other Proponent or any Signing Party with respect to the Plan, the Plan Documents, or otherwise, and none of the Debtors, other Proponents or Signing Parties has any fiduciary obligation to any Bank, except as set forth in the Plan Documents to which it is a party.

(v) The relationship between the Debtors and other Proponents on the one hand, and each Bank, on the other hand, with respect to the New Credit Agreement and the Plan Documents is, and is intended by each of them to be, solely that of debtor and creditor. No joint venture exists either between any Proponent and any one or more of the Banks, or among the Banks as a group. No agency relationship exists between the

Banks, on the one hand, and the Debtors, other Proponents or Signing Parties, on the other hand.

F. *Payments—Section 1129(a)(4).* Any payment made or to be made by any of the Proponents or any Person issuing securities or acquiring properties under the Plan, for services or for costs and expenses in, or in connection with, the Cases, or in connection with the Plan and incident to the Cases, has been approved by the Court as reasonable, or will be subject to such approval by the Court (including all amounts reserved for future payment in connection with the approval of, and partial payment of fees pursuant to, various interim fee applications).

G. *Affiliations Disclosed—Section 1129(a)(5).* The Proponents of the Plan have disclosed the identity and affiliations of any Person proposed to serve, after the confirmation of the Plan, as a director or officer of any Debtor or Proponent; the appointment to, or continuance in, such office by such Person is consistent with the interests of Holders of Claims and Interests and with public policy. The Debtors have disclosed the identity of any insider of the Debtors that will be employed or retained by the Debtors, and the nature of any compensation for such insiders.

H. *Best Interests of Creditors—Section 1129(a)(7).* The Banks and the IRS have asserted Secured or Priority Claims against the Debtors in amounts which, if valid, exceed any reasonably likely value of all of the Assets of the Debtors' Estates. The Debtors have challenged and objected to portions of both of these Claims; however, on the basis of assumptions presented by the Debtors with respect to the nature and extent of litigation challenging a portion of the Banks' Claims and relating to the Claim of the IRS, even viewing such assumptions in a light most favorable to the unsecured creditors, no reasonably foreseeable outcome of such litigation in any proposed Chapter 7 liquidation would return to the unsecured creditors any more than a nominal dividend. With respect to each impaired Class of Claims, each Holder of a Claim of such Class has accepted the Plan, or will receive or retain under the Plan on account of such Claim property of a value, as of the effective date of the Plan, that is not less than the amount that such Holder would so receive or retain if each Debtor which is liable to such Holder were liquidated under Chapter 7 of the Code. No Holder of a Secured Claim has made an election under Section 1111(b)(2) of the Code.

I. *Opportunity to Vote; Acceptance by Impaired Classes—Section 1129(a)(8).* All Holders of Claims and Interests impaired under the Plan have been given adequate opportunity to vote to accept or reject the Plan and to change any vote cast by them in respect of the Second Amended Joint Plan of Reorganization filed by the Proponents. Pursuant to Section 1127(d) of the Code, each vote cast by a Holder of a Claim in respect of the Second Amended Joint Plan and not changed by a vote cast in respect of the Plan shall be effective as a vote cast in respect of the Plan. Holders of Allowed Claims or Interests in all Classes have accepted the Plan within the meaning of Section 1126(c). Classes 1, 2c, 8a, 8c and 11 are unimpaired within the meaning of Section 1124 and are conclusively presumed to have accepted the Plan under Section 1126(f) of the Code.

J. *Treatment of Priority Claims—Section 1129(a)(9).* Except to the extent that the Holder of a particular Claim has agreed otherwise, the Plan provides that:

(i) With respect to a Claim of a kind specified in Section 507(a)(1) of the Code, on the effective date of the Plan the Holder of each such Claim will receive on account of such Claim cash equal to the Allowed Amount of such Claim; and

(ii) With respect to Claims of the kind specified in Section 507(a)(7) of the Code other than the IRS Claim, the Holder of each such Claim will receive on account of such Claim either (a) cash equal to the allowed amount of such Claim on or before the effective date of the Plan, (b) deferred cash payments, over a period not exceeding six (6) years after the date of assessment of such Claim, of a value, as of the effec-

tive date of the Plan, equal to the Allowed Amount of such Claim.

(iii) The Internal Revenue Service has consented to an agreement relating to the treatment of its Claim providing for (v) the allowance of the Claim of the IRS in the amount of $57,032,000, (w) the making of a cash payment on the Effective Date in the amount of $9,433,000, (x) payment of the remainder of the IRS Claim over eight years with interest at eight percent per annum, (y) the right of the IRS to share *Pro Rata* in any cash prepayment made by Placid to the Holders of Class 8b Claims under the Plan, and (z) the adjustment of basis as to certain coal properties. The proposed settlement thus involves substantial benefits to the Debtors, all Persons with direct or contingent interests and the other Proponents, is fair and equitable as to all parties in interest and to all such persons, and is in the best interests of creditors. There are no Claims of the kind specified in Sections 507(a)(2), (3), (4), (5) or (6) of the Code.

K. *Acceptance by Impaired Class— Section 1129(a)(10)*. All Classes of Claims that are impaired under the Plan have accepted the Plan, determined without including the acceptance of the Plan by any insider of the Debtor holding a Claim of such Class.

L. *Feasibility—Section 1129(a) (11)*. This Court has become familiar with the Assets of the Debtors as a result of extensive hearings relating to the use of cash collateral, the Green Canyon 29 development financing package, the Forbearance and Payment Agreement, and the sale of assets such as the Black Lake Field, Thanksgiving Tower, and the gold mine sold by Placid during the pendency of its Case. Evidence presented by the Debtors showed that all funds required by the Plan for the Bank Closing Date and the Effective Date to occur have been deposited into the confirmation fund set up for that purpose, and no Person has alleged that such funds will be insufficient. Officers of the Debtors have testified as to the Debtors' current and future businesses and business prospects. Peat Marwick Main, account-

ants to the Debtors (both pre- and post-petition) have expressed the opinion that the Debtors' economic assumptions (as presented in the business plan included in the Disclosure Statement) are reasonable and that, subject to reservations expressed relating to the uncertainties of oil and gas pricing and similar cyclical factors, Debtors' business plan is feasible and capable of being performed. This Court has likewise and independently reviewed the Debtors' business plan and made inquiry of the appropriate officers of the Debtors and other responsible Persons relating to various aspects of said plan. On the basis of the foregoing, the Court concludes therefrom that the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation, except as provided in the Plan, or need for further financial reorganization of either Debtor.

M. *Payment of Fees—Section 1129(a)(12)*. All fees payable under 28 U.S. C. § 1930, as determined by the Court at the hearings confirming the Plan, have been paid or the Plan provides for the payment of all such fees as required by Section 1129(a)(12) of the Code.

N. *Disclosure Statement*. The Disclosure Statement meets the requirements of Section 1125 of the Code. The Proponents have filed the Disclosure Statement in good faith with reasonable care and diligence, and have not knowingly or negligently included in such Disclosure Statement any materially misleading or erroneous statements or representations. The Supplement to Fourth Amended Disclosure Statement describes the changes to the Second Amended Joint Plan of Reorganization effected by the Plan accurately and completely and complies with Section 1125 of the Code. No Person has asserted a valid objection as to the adequacy of the disclosure and information provided in the Disclosure Statement, and all objections to the content of the Disclosure Statement are properly overruled.

O. *Good Faith Solicitation*. The solicitation of acceptances of the Plan, including solicitation in connection with modifications

of the Plan, by the Proponents was undertaken in good faith.

P. *Binding on Proponents and Holders.* Each of the Proponents and all Holders of Claims and Interests are bound by the Plan within the meaning of Section 1141 of the Code.

Q. *Present Liens.* The Liens created on property of the Debtors and Borrowing Subsidiaries under the Loan Documents (i) were intended by the Debtors and the Borrowing Subsidiaries to be legally, validly and effectively granted, (ii) were intended to be valid, perfected, first priority Liens on such property, and (iii) did not constitute preferential, fraudulent or otherwise avoidable transfers under the Code or under applicable laws of the United States or of any State.

R. *New Liens.* The Court is empowered to grant, and has granted in connection with the Plan, Liens in favor of the Banks (or the agent for the benefit of the Banks) on property of the Debtors and other Proponents which are (i) legally, validly and effectively granted, (ii) valid, first priority Liens on such property, prior in right (except to the extent that the Banks have agreed that certain Liens securing the PIOL NCR Agreement and related debt are subordinate to the Liens securing the New Credit Agreement, the Bank Secured Notes, and the related debt, or to Liens granted by PIOL to secure the PIOL Refinancing) to any other Liens, encumbrances or rights which Persons other than the Banks may have in the properties subject thereto, whether such Liens, encumbrances and rights derive by agreement (such as rights under contracts, security agreements, mortgages or operating agreements) or by statute (such as tax liens, mechanics' or materialmen's liens or oil and gas well liens) or otherwise, and (iii) not preferential, fraudulent or otherwise avoidable transfers under the Code or under applicable laws of the United States or any State.

S. *Settlement.* The Plan represents a compromise of certain disputes which have arisen in the Cases and in the Federal Court Litigation, as well as all matters arising in or related to the Bank Transaction Claims against the Banks. It has been reached after extended negotiations and after a lengthy period during which all parties have had the opportunity to evaluate their respective positions. All parties to the settlement have had an adequate opportunity to conduct discovery with respect to the various issues involved in the Cases and the Federal Court Litigation, and all parties have been represented by counsel of their own choosing.

(i) The Federal Court Litigation is an extremely complex matter. The Court has taken judicial notice of all pleadings and the record in the Federal Court Litigation, which pleadings and record are hereby made a part of the record of these confirmation hearings. There is a substantial probability that the Debtors may not succeed on the merits of their claims and defenses. *See Hunt v. Bankers Trust Co.,* 646 F.Supp. 59, 65-66 (N.D.Tex.1986). Moreover, prosecution of such litigation has been extremely time consuming and expensive and ultimate resolution, including appeals, could take years. The continued prosecution of such litigation has diverted key management personnel of the Debtors from their business activities, and this problem will be exacerbated as a trial approaches.

(ii) The Cases, too, have involved complex and sharply disputed matters. The record, including the Banks' proofs of claims, discloses that the Banks have claimed Liens on virtually all of the Debtors' Assets and full enforcement of such Liens could leave little or no Assets available to pay other creditors or for the equity owners of the Debtors. Moreover, the Banks have proposed a plan which, if confirmed and consummated, could eliminate the equity interests in the Debtors and could, depending on the ultimate purchaser, lead to the breaking up of Placid as an operating entity. The Debtors had previously proposed several other plans, as to which the Banks objected on the grounds that such plans were not confirmable. The process of confirming one of these disputed plans, and the anticipated appeals, could

leave the Debtors in a state of uncertainty for years and could have materially adverse effects on the continued business operations of the Debtors.

(iii) Under the Plan, the Banks have agreed to accept a combination of cash, notes, and other interests which have a value which is significantly below the aggregate of their Claims. At the same time, the Plan allows the Debtors to retain significant Assets which might otherwise have been lost, releases the Proponents from significant liabilities, preserves equity interests in Placid (thereby preserving equity ownership of the Proponents for the claimed benefit of Mary H. Huddleston and Albert D. Huddleston and their respective heirs, and for all the Initial Beneficiaries and the Subsequent Beneficiaries of Placid's shareholders), allows substantial payments to priority and unsecured creditors, and maintains Placid as owner of certain of its present Assets and business operations, and as a business entity.

(iv) As part of the settlement, (x) certain claims against certain members of the Hunt family were dismissed pursuant to an agreed order entered September 20, 1988 (the "Agreed Order") in connection with the Federal Court Litigation, and (y) those claims against the Debtors, Trust Estates, and certain members of the Hunt family identified in the order of dismissal described in Section 7.13 of the Plan and annexed hereto as Exhibit B will be dismissed.

(v) The proposed settlement thus involves substantial benefits to the Debtors, all Persons with direct or contingent interests and the other Proponents, is fair and equitable as to all parties in interest and to all such Persons, and is in the best interests of creditors. Each of the parties has had adequate representation of its interests in connection with such settlement.

T. *Termination of Litigation and Disputes.* (i) The matters being resolved include disputes and claims (including claims derived from the Debtors, Placid's Shareholders the Proponents, the Signing Parties or the Banks) among the Debtors, the Proponents, the Signing Parties, and the Banks. All of such parties intend the settlement to be broadly comprehensive and to terminate and extinguish (w) all existing litigation and claims which will be dismissed with prejudice pursuant to the order of dismissal identified in Section 7.13 of the Plan, (x) all claims dismissed with prejudice pursuant to the Agreed Order, (y) all existing or potential claims arising from or relating to the Existing Credit Agreement, the Financings (as hereinafter defined), the Forbearance and Payment Agreement dated as of December 4, 1986, and all other financial accommodations consolidated in, or refinanced by, any of the foregoing, and (z) any Bank Transaction Claims against the Banks or any claims derivative of the Bank Transaction Claims. Without limiting the foregoing, the Court finds that the claims which have been settled and resolved include, among others, all claims which may be made by any Person that the transactions, relationships and dealings represented by the Financings (as hereinafter defined) and the Existing Credit Agreement, and the Agreement for Corporate Separation dated June 18, 1982 and any amendments thereto (including without limitation the Amendment to Agreement for Corporate Separation dated as of May 23, 1983) deprived such person of any rights or interests in, or constituted a breach of any fiduciary or trust relationship with respect to, any of the Trust Estates. As used in these Findings and Conclusions, the term Financings refers to (a) that certain $1,100,000,000 Revolving Credit Agreement dated as of April 28, 1980 (the "1980 Revolving Credit Agreement"), among Placid, as Borrower, First National Bank in Dallas and Morgan Guaranty Trust Company of New York, as Agents, and thirteen banks, as Lenders, (b) the August 29, 1980 Loan Agreement of Placid and Placid International Oil, Ltd. and certain banks and any financing loan, or other financial accommodation consolidated therein or refinanced thereby; (c) the June 1, 1981 Amended and Restated Revolving Credit Agreement of Placid and certain banks and the June 1, 1981 Amended and Restated Loan Agreement of Placid and PIOL and certain banks and any financing,

loan, or other financial accommodation consolidated therein or refinanced by either; (d) that certain $1,100,000,000 Credit Agreement dated as of February 24, 1982 among Placid and PIOL, as Borrowers, RepublicBank Dallas, National Association, as Agent, and twenty banks, as Lenders, (e) the August 30, 1982 Credit Agreement of Placid and PBSC and certain banks and any financing, loan, or other financial accommodation consolidated therein or refinanced thereby; and (f) all renewals, amendments, and restatements of any of the foregoing and any financing, loan, or other financial accommodation consolidated into or refinanced by any of the foregoing.

(ii) To implement the foregoing, the Debtors, the Proponents, the Signing Parties, and the Banks, as well as such other Persons, have entered into RCI Documents which are intended to assure that this settlement is comprehensive and final. Such RCI Documents have been entered into by the respective Signing Parties after full opportunity to review the terms thereof and are valid, binding and enforceable against each Signing Party in accordance with their terms. The Signing Parties have received good and valuable consideration for such RCI Documents, including but not limited to that set forth in Finding and Conclusion S (iii) above. Absent the settlement, it is possible that the interests of Mary H. Huddleston and Albert D. Huddleston, if any, and their respective heirs and those of all Subsequent Beneficiaries in Placid, through their interests in the Trust Estates, could be eliminated.

(iii) The execution of the RCI Documents by each Subsequent Beneficiary or the Next Friend thereof, was informed or knowing and was intended to release the claims as described therein, and each such Beneficiary had the opportunity to or did in fact consult with counsel of his or her own choosing in connection therewith. The execution of the RCI Documents by the Next Friend of any minor Subsequent Beneficiary was carried out with due regard for the interests of such Subsequent Beneficiary, and in a manner which protected the interests of each such Subsequent Beneficiary.

(iv) The terms and enforceability of the RCI Documents and the manner in which they were obtained are consistent with public policy and the terms of the Indentures pursuant to which the Trust Estates were created.

U. *Fair and Equitable.* The Plan (including without limitation the New Credit Agreement incorporated therein) is fair and equitable to all parties-in-interest, including, without limitation, the Debtors, the other Proponents and all Holders of Claims and Interests. The different treatment accorded by the Plan to Holders of Claims in Classes 8 and 10 is justified due to the fact that Claims in Class 10 are either contingent or unliquidated. Since all impaired Classes have voted to accept the Plan, it is not necessary for this Court to consider the provisions of Section 1129(b) of the Code.

■ V. *Modifications and Amendments.* The Errata Sheet and the First, Second and Third modifications proposed by the Proponents (all of which are attached hereto) (collectively, the "Modifications"), do not adversely change the treatment of the Claim or Interest of any Creditor or equity security holder who has not accepted in writing any of the Modifications and no further disclosure is required in respect of the Modifications. All interested parties, including those affected by the Modifications, received adequate notice of the Modifications pursuant to Bankruptcy Rule 3019. The Modifications and amendments are hereby deemed accepted by all Creditors and Holders of Interests who have previously accepted the Plan. Moreover, the Modifications and amendments comply with Sections 1122 and 1123 of the Bankruptcy Code.

W. *Documents Valid, Binding and Enforceable.* The New Credit Agreement, Collateral Security Documents, RCI Documents, and all of the other documents to be executed and delivered pursuant to or in connection with the Plan are each valid, binding and enforceable against Placid, the Debtors, the Proponents, the Signing Parties, and any other Person who is a party thereto and any other Person in accordance

with their terms and entered into for good and valuable consideration, including the benefits of the Plan and the Banks' consent thereto.

X. *Existing Indemnities.* Except as specifically provided in the Subsequent Beneficiaries' Indemnities executed by certain Subsequent Beneficiaries, pursuant to Section 524(e) of the Code and notwithstanding Findings and Conclusions S and T hereof or any other of these Findings and Conclusions, and notwithstanding any provision of the Confirmation Order, neither this Confirmation Order, the Plan, nor any Plan Document shall terminate, limit, discharge, release or affect the rights of any of the Banks against any Person arising under or in connection with any indemnification agreements, consents, releases, opinion letters, or other agreements or documents given by or on behalf of any Initial Beneficiary, any Subsequent Beneficiary, Albert D. Huddleston, Mary H. Huddleston or any other Person executed in connection with the 1980 and 1982 Credit Agreements, the Corporate Separation, or the Existing Credit Agreement including without limitation the indemnities in Section 8.4 of the Existing Credit Agreement (the "Existing Indemnities"). For this purpose, the Plan and Plan Documents are not and shall not be regarded as a novation, modification or other agreement which discharges any duties or obligations, or relases any rights, under any such Existing Indemnities; rather, the treatment of the Banks under the Plan and Plan Documents constitutes a modification, amendment, variation, addition or extension to the Loan Documents. Each Person who is a party to the Existing Indemnities has received notice of the Plan and the Plan Documents in conformity with the requirements of the Existing Indemnities, and to the extent applicable, has granted any consent or approval of the Plan or Plan Documents which may be required by the Existing Indemnities or such consent has been unreasonably withheld. Neither the Plan nor the RCI Documents release any existing claim against Caroline Rose Hunt, Margaret Hunt Hill, or Haroldson L. Hunt, Jr., nor do they release any existing claim against any oth-er Person other than claims expressly dismissed with prejudice in the order of dismissal referred to in Section 7.13 of the Plan or the Agreed Order.

Y. *Consent to Entry of Findings and Conclusions.* All of the Proponents of the Plan and all Signing Parties have agreed to the entry of these Findings and Conclusions.

Z. *Certificate of Deposit.* The pledge of the certificate of deposit referred to in clause (b) of Section 7.10 of the Plan and the delivery of such certificate of deposit to NCNB as agent for the Banks constitute one transaction and are deemed to occur contemporaneously.

AA. *Objection Filed by Albert D. Huddleston As Next Friend For His Minor Children.* With respect to the objections filed by Albert D. Huddleston, acting as Next Friend for his children ("Huddleston") and an oral purported objection made on behalf of Huddleston, and oral statements made in respect of jurisdictional issues affecting Albert D. Huddleston and Mary H. Huddleston at the hearings on confirmation to the Plan:

i. Albert D. Huddleston is the father of Erika, Caroline, Gordon, and Paul (the "Huddleston Children") who are the minor grandchildren of Nelson Bunker Hunt and the minor great-grandchildren of H.L. Hunt. The Huddleston Children are heirs at law of Nelson Bunker Hunt and contingent subsequent beneficiaries of the Nelson Bunker Hunt Trust Estate.

ii. The Nelson Bunker Hunt Trust Estate is part owner of Placid Oil Company, Debtor-in-Possession, which owns PBSC and other proponent entities the debts of which entities are addressed by the Plan.

iii. Albert D. Huddleston is the spouse of Mary Hunt Huddleston.

iv. The Plan contemplates that the RCI Documents will release all claims arising out of the financial transactions with the Banks, the settlement between the Banks and the Debtors, the bankruptcy proceedings, the Plan and Confirmation Order, and other related transactions, to be executed and delivered by, among others, each of the

shareholders of Placid, each Trustee of the Trust Estates, each member of the advisory boards for the Trust Estates, Placid, Placid's subsidiaries, and the Subsequent Beneficiaries.

v. Article X of the Plan releases all claims that are derivative of Placid and the Trust Estates, and certain direct claims of the Initial Beneficiaries, the Subsequent Beneficiaries and other non-debtors against the Banks.

vi. On or about September 8, 1988, Huddleston filed an Objection to the Plan and sought an order denying confirmation of the Plan on the ground that the Huddleston Children's rights are being compromised without fair treatment or an opportunity for hearing. Thereafter, Huddleston filed an Amended Objection asserting that the Court lacks jurisdiction to release claims against third parties under a plan of reorganization.

vii. Huddleston attached to the Objection an original Petition filed in the District Court of Dallas County, Texas in December 1987 which, according to Huddleston, describes "extremely valuable claims ... which have not been asserted by either the [Nelson Bunker Hunt Trust] Estate or Placid." Huddleston objected to the release of such claims under Article X of the Plan.

viii. Huddleston specifically objected to the releases granted to the Banks under Article X of the Plan and under various RCI Documents, to be executed and delivered by Placid and the Trust Estates pursuant to the terms of the Plan.

ix. The execution and delivery of the RCI Documents to the Banks and the inclusion of Article X in the Plan are integral parts of an overall settlement among Placid, the Banks and others pursuant to which Placid, its equity holders, and Placid's Affiliates will receive good and valuable consideration including, *inter alia,* (a) an agreement by the Banks to extend a portion of Placid's indebtedness under the Existing Credit Agreement over a period of years, thereby affording to Placid relief from its pre-petition indebtedness and an opportunity to continue operating its busi-

ness, (b) the termination of the Federal Court Litigation, which to date has lasted some two and one-half years, thereby ending the drain on Placid's cash flow caused by litigation expenses and freeing Placid's officers and employees to operate Placid's business, (c) reciprocal releases from the Banks, and (d) Placid's equity holders will retain their equity ownership of Placid and therefore their ability to realize value from the future operations of Placid's business in accordance with the consummated Plan.

x. Placid's officers have testified that the proposed settlement with the Banks represents a considered business judgment, made with the advice of experienced bankruptcy and litigation counsel and that Placid believes the settlement is fair and equitable and in the best interests of the Debtors, their estates and their creditors.

xi. A major reason for the beneficial settlement of the disputes among Placid and the Banks is the dismissal of present litigation, the prevention of future litigation, and the consequent cessation of legal expenses for Placid and the Banks. The Banks have made it a condition to their agreement to the beneficial treatment of Placid's indebtedness that they receive the RCI Documents provided for by the Plan and that Article X be included in the Plan.

xii. This Court has entered an order in the Chapter 11 case of the Nelson Bunker Hunt Trust Estate authorizing the Trustee of such Estate to execute the appropriate RCI Documents required by the Plan.

xiii. The Court has the power to confirm a plan which releases claims of the Debtor and of non-debtor third parties and claims derived from the Debtor or the Trust Estates against the Banks as part of a settlement of claims belonging to the estate.

xiv. The Plan has been modified to exclude Mary H. Huddleston, Albert D. Huddleston, or any children born to or adopted by Mary H. Huddleston, including without limitation Erika Gordon Huddleston, Caroline Bunker Huddleston, Gordon Bunker Huddleston or Paul Lewis Huddleston or any of their heirs, beneficiaries, legatees,

devisees, remaindermen, assignees or transferees. Consequently, Huddleston has withdrawn his objections and Albert D. and Mary H. Huddleston have withdrawn their oral purported objection.

BB. *Objections Overruled.* In light of these Findings and Conclusions all objections to confirmation of the Plan are properly overruled or have been withdrawn.

CC. *Jurisdiction.* The Plan provides for various retentions of jurisdiction by the Court and for certain exceptions thereto. This Court concludes that it may properly retain jurisdiction over the matters set forth in Section 11.1 of the Plan and that it has no jurisdiction over those matters referred to in Section 11.2 of the Plan except as otherwise expressly provided therein.

DD. *Stipulations and Orders in Aid of Confirmation.* Certain Stipulations and Orders in aid of Confirmation have been entered during these Confirmation proceedings which are attached hereto. They are incorporated herein by reference and adopted as additional findings of fact of the Court.

EE. *M & M Lien Claims.* In aid of administration of the terms of the Plan, it is appropriate to enjoin all actions by mechanics' lienholders and others against Placid or Placid's JWIOs to collect, enforce or foreclose their Liens for so long as Placid is paying the Placid Net Portion pursuant to the terms of the Plan and the JWIOs have made payments into the Joint Working Interest Owners' Fund as provided in the Plan. While the injunction is in effect, Holders of M & M Lien Claims shall retain their Liens to secure payment of the Placid Net Portion. Further, upon payment in full of all allowed M & M Lien Claims, and the payment of the JWIOs' proportionate share of the M & M Lien Claims, the JWIOs shall be released from any and all Claims of the Holders of M & M Claims.

FF. *Release of JWIOs.* JWIOs shall be released from all liability with regard to Class 8b Claims upon payment of 100% of their share of the Class 8b Claims and upon payment of such funds to the Holders of such Class 8b Claims.

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS DALLAS DIVISION

WILLIAM HERBERT HUNT, et al., Plaintiffs and Counter–Defendants,

vs.

BANKERS TRUST COMPANY, et al., Defendants and Counter–Plaintiffs.

Civil Action No. 3–86–1684–G

(Consolidated)

AGREED ORDER

WHEREAS, the undersigned counsel for certain parties to this action ("Movants") have informed this Court that they have settled certain disputes in the manner and to the extent set forth hereinafter; and

WHEREAS, the terms of such settlement are set forth in a "Modified Fourth Amended Joint Plan of Reorganization" (the "Plan"), the documents executed pursuant to and in respect of the Plan, and the Order confirming the plan (the "Order of Confirmation"), entered in the United States Bankruptcy Court for this District in the Chapter 11 reorganization cases of *In re Placid Oil Company* (Case No. 386–33419–A–11) and *In re Placid Building and Service Company* (Case No. 386–33420–A–11); and

WHEREAS, on September 20, 1988 this Court entered an Agreed Order dismissing the claims asserted in this action by William Herbert Hunt, Nelson Bunker Hunt and Lamar Hunt (the "Hunt brothers") against those banks or other financial institutions listed on Exhibit "A" hereto (collectively, the "Placid Banks"), and dismissing certain claims asserted by the Placid Banks against the Hunt brothers; and

WHEREAS, all of the remaining plaintiffs in this action, to wit, William Adams, as Trustee of the Lamar Hunt Trust Estate, F.C. Vickers, as Trustee of the Nelson Bunker Hunt Trust Estate, Paul A. Hope, as Trustee of the William Bunker Hunt Trust Estate, Penrod Drilling Company,

Placid Oil Company, Crescent Investment Company, Placid Building & Service Company, Placid International Oil, Ltd., Placid Investment Company, Placid Refining Company and Placid Oil Company Egypt (the "Plaintiffs"), and each of them, now desire to dismiss with prejudice all of the claims asserted in this action against the Placid Banks, and the Placid Banks now desire to dismiss with prejudice certain of the claims asserted in this action against said Plaintiffs; and

WHEREAS, appropriate notice has been given to all affected parties;

IT IS HEREBY ORDERED THAT:

1. The causes of action asserted at any time in this action by or on behalf of the Plaintiffs, or any of them, against the Placid Banks, or any of them, are dismissed with prejudice, each party to bear its own costs, except that any defenses to the causes of action that are dismissed without prejudice pursuant to paragraph 2(a) below are also dismissed without prejudice;

2. The causes of action asserted at any time in this action by or on behalf of any Placid Bank against the Plaintiffs are dismissed with prejudice, each party to bear its own costs, except as follows:

(a) Any cause of action against the Plaintiffs or any of them—

(i) with respect to the validity or enforceability of or right to recover under any indemnity or indemnities given by any Plaintiff to any Placid Bank; or

(ii) that involves the right of any Placid Bank to contribution or indemnity from any Plaintiff;

(other than causes of action for the payment of those amounts now claimed or which could have been now claimed for the payment of such amounts by any Placid Bank in this action) is dismissed without prejudice.

(b) As to the Placid Banks which are parties to the transactions described in this subparagraph (b), nothing contained in this Order shall dismiss any claim by such bank arising from any transaction, relationship or dealing relating solely and directly to the Amended and Restated Credit Agreement dated as of December 5, 1984, as amended, among Penrod Drilling Company ("Penrod"), Nelson Bunker Hunt Trust Estate, William Herbert Hunt Trust Estate, Lamar Hunt Trust Estate (collectively, the "Trust Estates") and thirteen banks and/or any predecessor agreements under which any such Placid Bank extended credit to or on behalf of Penrod or any of the Trust Estates (which claims are the subject of separate arrangements among those banks, Penrod, and others); and

(c) As to the Placid Banks which are parties to the transactions described in this subparagraph (c), nothing contained in this Order shall dismiss any claim by such bank arising from any transaction, relationship or dealing relating solely and directly in any way to the extensions of credit by certain Placid Banks to or on behalf of Hunt International Resources Corporation, the Great Western Sugar Company, Godchaux–Henderson Sugar Company or Northern Ohio Sugar Company, or any of them, and the rights of any such Placid Bank to obtain from said entities and from any of the Plaintiffs, or from others, damages, indemnities and other relief arising out of, in connection with, or otherwise relating to said extensions of credit.

3. Any pleading or count thereof asserted in this action, which has not heretofore been dismissed or is not now dismissed pursuant to this Agreed Order, is severed and continued for the entry of further order and judgment thereon.

4. The dismissals provided for herein are without prejudice to the Placid Banks' rights under such settlement, the Plan, and the Order of Confirmation; and without prejudice to the Placid Banks' rights to enforce the terms of such settlement, the Plan, the Order of Confirmation, and all documents, agreements and instruments executed in connection therewith or referred to therein, including but not limited to the indemnification agreements executed pursuant to or referred to in the Plan or the Order of Confirmation.

5. There being no just reason for delay, final judgment pursuant to Fed.R.Civ.P.

54(b) is hereby entered with respect to the causes of action dismissed pursuant to this Order.

## ORDER

## (1) CONFIRMING PLAN OF REORGANIZATION

## AND

## (2) FIXING BAR DATE FOR FILING OF ADMINISTRATIVE EXPENSE CLAIMS, CLAIMS ARISING FROM THE REJECTION OF EXECUTORY CONTRACTS, DEFICIENCY CLAIMS AND APPLICATIONS FOR ALLOWANCES OF COMPENSATION AND/OR REIMBURSEMENT OF EXPENSES

Placid Oil Company ("Placid") and Placid Building and Service Company ("PBSC"), debtors in possession in the above-captioned Chapter 11 cases ("Debtors"), and Placid International Oil, Ltd. ("PIOL"), Placid Refining Company ("PRC"), Placid Chemical Company ("PCC") and Placid Oil Company (United Kingdom) ("PUK") (Placid, PBSC, PIOL, PRC, PCC and PUK collectively, the "Proponents") have proposed and filed a Modified Fourth Amended Joint Plan of Reorganization, as modified (including all exhibits thereto, the "Plan") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on August 26, 1988.

A copy of the Plan and of the Supplement to Fourth Amended Disclosure Statement approved by the Court * on August 31, 1988 as a supplement to the Fourth Amended Disclosure Statement approved by the Court on March 1, 1988 (such disclosure statement, as supplemented, being hereinafter referred to as the "Disclosure Statement") was transmitted to all Holders of Claims and Interests and hearings on confirmation of the Plan were held by the Court beginning on March 1, 1988. Based on the record of the hearings, all the proceedings held before the Court in these Cases, and the Findings of Fact and Conclusions of Law entered contemporaneously herewith, which Findings and Conclusions are hereby incorporated by reference as if fully set forth herein, and after due deliberation, and sufficient cause appearing therefor, this Court hereby issues the following order.

IT IS HEREBY ORDERED THAT:

1. *Confirmation.* The Plan, a copy of which is annexed hereto as Exhibit A, as amended by any modifications approved by this Court prior to or on the date hereof, be, and the same hereby is, confirmed.

2. *Discharge.* Subject to paragraph 3 hereof, each Debtor be, and it hereby is, discharged from each debt (as the term "debt" is defined in the Code) or Claim that arose against it before the date of entry of this Order (including, without limitation, (i) any debt based upon a guarantee of collection or payment or performance of any obligation, (ii) any debt of any kind specified in Section 502(g), 502(h) or 502(i) of the Code and (iii) any debt for which such Debtor is liable in its capacity as a guarantor or surety), whether or not (a) a proof of claim based upon such a debt or Claim is filed or deemed to be filed under Section 501 of the Code, (b) such Claim is allowed under Section 502 of the Bankruptcy Code, or (c) the holder of such Claim has accepted the Plan.

3. *Plan Obligations.* Nothing in this Order or the Plan shall operate as a discharge of any Debtor from Claims, obligations or liabilities to be paid or performed under the Plan or any Plan Document.

4. *Judgments.* Any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of any Debtor with respect to any debt discharged hereunder, be, and it hereby is, rendered null and void.

5. *Injunction—Discharged Debts.* The commencement or continuation of any action, or the employment of process with respect to any debt discharged hereunder, or any act to collect, recover or offset any debt discharged hereunder, as a personal liability of any Debtor, or from properties

* Capitalized terms not otherwise defined in this Order and the accompanying Findings of Fact and Conclusions of Law shall have the same meaning as in the Plan.

of any Debtor, be, and it hereby is, forever enjoined.

6. *M & M Liens.* The Holders of M & M Lien Claims be, and they hereby are, enjoined from taking any action to collect, enforce or foreclose their Liens retained on Placid's Net Portion against Placid or Placid's JWIOs for so long as Placid is paying its Net Portion pursuant to the terms of the Plan. Any previous injunction will be continued until the Effective Date and will be terminated on the Effective Date with regard to any JWIO who does not pay its proportionate share of the Finally Allowed M & M Lien Claims.

7. *Injunction—Suits Against Banks.* The commencement or continuation by or on behalf of any Holder of an Interest or Claim, any Debtor, Proponent, Signing Party, Initial Beneficiary, Subsequent Beneficiary or other party-in-interest or any Person acting or purporting to act by, through, under or on behalf of any of the foregoing, of any action, the employment of process, or any act to assert a claim for relief against any Bank in respect of (a) the Bank Transaction Claims, (b) any actions taken during the course of the Cases, (c) the authorization for or the formulation, negotiation, confirmation or consummation of the Plan or any other Plan Document, (d) distributions, payments or transfers made under the Plan or any Plan Document, (e) any matter, transaction, or occurrence which was covered by or was the subject matter of an RCI Document executed by the Signing Party, (f) any claims arising from or relating to the Existing Credit Agreement, the Financings, the Agreement for Corporate Separation dated June 18, 1982, and any amendments and modifications of the foregoing, or (g) acts performed pursuant to the Plan or any Plan Document, be, and it hereby is, forever enjoined.

8. *Injunction re Actions in Other Courts.* Except for proceedings brought in this Court as contemplated in Section 11.1(e) of the Plan, and for other proceedings permitted by further order of this Court, each Holder of an Interest or Claim, Debtor, other Proponent, Signing Party,

Initial Beneficiary, Subsequent Beneficiary, and other party-in-interest and any Person acting or purporting to act by, through, under or on behalf of any of the foregoing be, and they hereby are, forever enjoined from commencing any action in any court seeking to modify any term of the Plan or any Plan Document or an act taken or to be taken under the Plan or any Plan Document, or to interfere with the receipt and retention of any distribution or transfer of Assets made or to be made under the Plan or any Plan Document or any payment or performance of obligations under the Plan or any Plan Document.

9. *Compromise and Settlement.* As of the Bank Closing Date, all Bank Transaction Claims of each Debtor, any Affiliate of each Debtor, the Creditors' Committee, any Creditor, the Trust Estates, the Initial Beneficiaries, any Subsequent Beneficiary, and any Persons claiming through or in the right of any of the Persons set forth above or deriving or purporting to derive any such Claim from such Person and their respective heirs, successors, assigns, trustees, subsidiaries, affiliates, officers, directors, agents, employees, representatives, attorneys, guardians and similar officers, which any such Person ever had, has, or may have, against any of the Banks or any of their respective present and former counsel, directors, officers, employees, representatives, agents, accountants, consultants, investment bankers or experts or any of their respective successors, assignors, assignees, transferees, indorsees, subsidiaries, affiliates, officers, directors, agents, employees, representatives and attorneys, collectively and/or individually, be and they hereby are compromised, released, settled and discharged, and the compromise and settlement be, and it hereby is, approved as being fair and equitable with respect to the Debtor and all parties in interest, in the best interests of the Debtors' estates, and in conformance with the standard set forth in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc., v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968) and *In re AWECO, Inc.,* 725 F.2d 293 (5th Cir.1984). The settlement with the IRS has

also satisfied the foregoing standards, is fair and equitable, and it shall be, and hereby is, approved.

10. *Disclosure Statement.* All Persons be, and hereby are, forever enjoined from commencing any action or prosecuting any claim for relief or cause of action against any Proponent, Affiliate, Bank, the Unsecured Creditors' Committee or any other Person or any officer, director, employee, trustee, agent or representative of, or attorney, accountant, consultant or other Person or entity retained by, any Proponent, Affiliate, Bank, the Unsecured Creditors' Committee or any other Person, based upon any of the statements or representations included in, or alleged omissions in, the Disclosure Statement.

11. *Vesting of Property.* On the Bank Closing Date, except as otherwise provided in the Plan, any other Plan Document, or in this Confirmation Order, all of the property of each Debtor's estate shall vest in such Debtor and shall be free and clear of all Liens, Claims and Interests.

12. *Binding Order.* The provisions of the Plan, the Plan Documents and this Confirmation Order be, and they hereby are now, and forever afterwards, binding on each Debtor, other Proponent, Creditor of a Debtor, Holder of an Interest in Placid, Signing Party, any Initial or Subsequent Beneficiary, any other party in interest, any Person making an appearance in any of the Cases, and any other Person affected thereby, as well as their respective heirs, successors, assigns, trustees, subsidiaries, affiliates, officers, directors, agents, employees, representatives, attorneys, beneficiaries, guardians and similar officers, or any Person claiming through or in the right of any of such Persons.

13. *Carrying Out Plan.* Each Debtor, the other Proponents, the Lockbox Bank, the Signing Parties, the Holders of Claims or Interests, the Banks, the Agent, and their respective Trustees, directors, officers, agents and attorneys be, and they hereby are, authorized, empowered and directed to carry out all of the provisions of the Plan and to perform such acts and execute and deliver the Plan Documents

and such other documents as are necessary or appropriate in connection with the Plan, the Plan Documents and this Confirmation Order. Without limiting the generality of the foregoing, pursuant to Section 1142 of the Code each Person claiming a Lien on any Asset of a Debtor which is not preserved or is subordinated under the Plan is hereby directed to execute and deliver all releases or other documents which the Proponents or the Banks may request to release and terminate, or to subordinate, such Lien.

14. *Transfers Effective.* All of the transfers of property of the Debtors' respective estates provided for in the Plan and in the Plan Documents to be made on the Confirmation be, and the same hereby are, deemed made as of the Confirmation without any further action on the part of any Debtor, any other Proponent, any Holders of Claims or Interests, any Bank, the Agent, the Lockbox Bank or any Signing Party, and are valid and effective as of the Confirmation; without any requirement of filing or recording of documents of conveyance, and without any approvals or consents from governmental entities or any other Persons and without regard to any errors, deficiencies or omissions in the legal descriptions of any lands or oil and gas interests so to be transferred; *provided, however,* that, notwithstanding the foregoing, the Debtors whose property is to be transferred will make all necessary filings and recordings on or before the Bank Closing Date, and will obtain all necessary or desirable governmental approvals or consents on or before the Effective Date, to establish and perfect such transfers under the provisions of state, provincial and federal law which would be applicable in the absence of this Confirmation Order, and shall thereafter cooperate to make all other filings and recordings which would otherwise be required under applicable law to give notice of such transfers and conveyances to third parties; and *provided further,* that, in their reports required to be filed in this Court, pursuant to Bankruptcy Rule 2015(a)(6), on or before the thirtieth day after the Confirmation Date, the Debt-

ors shall show compliance with the immediately preceding proviso.

15. *Liens Validated.* All of the Liens to be created under the Plan, the Collateral Security Documents or any other Plan Documents be, and the same hereby are, deemed created, valid and perfected on, and (except to the extent that the Banks have agreed that certain Liens securing the PIOL NCR Agreement and related debt are subordinate to the Liens securing the New Credit Agreement, the Bank Secured Notes, and the related debt, or to Liens granted by PIOL to secure the PIOL Refinancing) to have a first priority as described in Finding Q as of the Confirmation, without any further action on the part of any Debtor, any other Proponent, the Holders of Claims or Interests, any Bank, the Agent, the Lockbox Bank, or any Signing Party, without any requirement of filing or recording of financing statements, mortgages or other evidence of such Liens and without any approvals or consents from governmental entities or any other Persons and regardless of whether or not there are any errors, deficiencies or omissions in any property descriptions attached to the Collateral Security Documents referred to in the following proviso; *provided, however,* that, notwithstanding the foregoing, Placid and the other Proponents granting such Liens will make all necessary filings and recordings of the Collateral Security Documents on or before the Bank Closing Date, and will obtain all necessary or desirable governmental approvals and consents on or before the Effective Date, to establish and perfect such Liens under the provisions of state, provincial, federal or other law (whether domestic or foreign) which would be applicable in the absence of this Confirmation Order, and shall thereafter cooperate to make all other filings and recordings which would otherwise be required under applicable law to give notice of such Liens to third parties; and *provided further,* that, in their reports required to be filed in this court pursuant to Bankruptcy Rule 2015(a)(6), on or before the thirtieth day after the Confirmation Date, the Debtors shall show compliance with the immediately preceding proviso.

Upon completion of such filings and recordings and the occurrence of the Bank Closing Date, NCNB, as agent under the Existing Credit Agreement, shall release the Liens heretofore taken in connection therewith. To the extent that such prior Liens and security interests burden any property subject to the new Liens created under the Plan, the Collateral Security Documents or any other Plan Documents, such new Liens shall be deemed extensions and continuations of such prior Liens and security interests, and the releases of such prior Liens shall so provide.

16. *Class 5 Claims Allowed.* Each Class 5 Claim be, and it hereby is, an Allowed Claim and an Allowed Secured Claim entitled to vote upon and receive distributions under the Plan.

17. *Effectuating Settlement.* (i) The execution and delivery to the Banks of all of the RCI Documents be, and hereby are, approved.

(ii) The Debtors, the other plaintiffs in the Federal Court Litigation, and the Banks be, and they hereby are, directed to accomplish the dismissals specified in Section 7.13 and 7.14 of the Plan.

18. *Existing Indemnities.* Notwithstanding any Finding or Conclusion in the Findings of Fact and Conclusions of Law entered contemporaneously herewith or any provision of this Confirmation Order, neither this Confirmation Order, the Plan, nor any Plan Document (except as specifically provided in certain RCI Documents executed by certain Subsequent Beneficiaries) shall terminate, limit, discharge, release or enjoin the commencement or continuation of any action in any appropriate court, the employment of process or any act to assert a claim for relief against any Person by a Bank arising under or in connection with the Existing Indemnities.

19. *Executory Contracts.* Except as otherwise provided in orders of this Court respecting the Ammonia Producers Partnership or Promix executory contracts, the assumption or rejection of executory contracts and unexpired leases as provided in

Article IX of the Plan be, and it hereby is, approved.

20. *Plan Securities.* Any and all securities issued under or pursuant to the Plan be, and they hereby are, deemed to have been issued pursuant to Section 1145 of the Code.

21. *No Taxes Payable.* The issuance, transfer or exchange of any security issued under or pursuant to the Plan, or the making or delivery of an instrument of transfer under this Plan (including the instruments creating Liens or other interests in property in favor of the Banks), may not be taxed under any law imposing a stamp tax, transfer tax or other similar tax.

22. *Making of Distributions.* Except as otherwise expressly provided in the Plan or any other Plan Document, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the distribution date set forth in the Plan to either the address listed in the Person's notice of appearance (as amended) in the Cases or the address listed in such Person's proof of claim filed in any Case, or, if neither of the foregoing is applicable, the last known address of the Persons entitled thereto.

23. *Unclaimed Funds.* Any monies to be distributed by a Debtor pursuant to the Plan and remaining unclaimed on the date one year after the date of the entry of this Order (the "Reversion Date") shall revert to such Debtor, except that any monies to be distributed within ninety days prior to the Reversion Date or subsequent to the Reversion Date shall revert to such Debtor only after such monies have remained unclaimed for a period of at least ninety days following such date.

24. *Rejection Claims.* Any Person alleging Claims arising from the rejection of any executory contract or unexpired lease pursuant to Article IX of the Plan shall file a proof of claim with the Court within thirty days after the rejection of such executory contract or unexpired lease becomes effective, as the case may be, or be forever barred from asserting any claim therefor against any Debtor, its estate, or otherwise. Objections to any such proof of claim shall be filed by any party in interest not later than 60 days after the filing of such proof of claim.

25. *Deficiency Claims.* Any Person asserting a Deficiency Claim shall file a proof of claim with the Court within thirty days of the determination by this Court of the Allowed Amount of its Secured Claim or be forever barred from asserting any claim therefor against any Debtor, its estate or otherwise. Objections to any such proof of claim shall be filed by any party in interest not later than 60 days after the filing of such proof of claim.

26. *Administrative Claims.* Any Person alleging entitlement to payment from any Debtor's estate of an administrative expense of the kind specified in Section 507(a)(1) of the Code shall file a proof of claim with the Court within ninety days after the date of entry of this Confirmation Order or be forever barred from asserting any claim therefor against such Debtor, its estate or otherwise.

27. *Notice of Entry.* Within ten days after the date of entry of this Order, each Debtor shall mail to all parties in interest in its case notice of entry of this Confirmation Order, together with notice of the last day for filing administrative expense Claims, Deficiency Claims, Claims arising from the rejection of executory contracts and applications for allowances of compensation and/or reimbursement of expenses.

28. *Stay Terminated.* The stay in effect in each Debtor's Case pursuant to Section 362(a) of the Code and any stay entered in each such case by this Court under Section 105 of the Code shall be, and they hereby are, dissolved and of no force or effect as of the Effective Date, *provided, however,* that with respect to the Placid Banks and each of them, such dissolution shall occur as of the Bank Closing Date. The foregoing sentence shall not apply to or affect the injunctions provided for hereby.

29. *Remedies.* Each obligee of a Proponent under the Plan be, and each hereby is, authorized to exercise the remedies set

forth in the Plan and the Plan Documents, all in accordance with their respective terms, and any and all of such remedies may be exercised without need for any application to or further order of this Court or any other court; and except as permitted by the Plan, each of the Debtors, each other Proponent, each Signing Party, each holder of a Claim or Interest and every other party in interest be, and hereby is, forever enjoined from taking any action to prevent or otherwise interfere with the exercise of such remedies.

30. *Retention of Jurisdiction.* (a) Subject to the limitations set forth in Section 11.2 of the Plan and in the following clause (c), the Court shall retain jurisdiction over each of the Cases to the extent provided in the Plan, including jurisdiction over all defaults under the Plan with respect to matters relating to Classes 8(b) and 10 and all controversies, disputes and suits which may arise in connection with the interpretation or enforcement of the Plan, any security issued under or pursuant to the Plan or any Plan Document, over post-Confirmation commencement or continuation of litigation arising out of the avoidance powers given either Debtor under the Code and over enforcement of the injunctions and releases provided for in the Plan, the Plan Documents, or this Order and over fee applications for professionals retained in the Cases pursuant to orders of this Court.

(b) Subject to the following clause (c), this Court shall have jurisdiction over any matter or dispute relating to the RCI Documents or any other documents described in Section 6.8(f) of the Plan, or the subject matter of any thereof, and the rights and benefits thereunder.

(c) No provision of the Plan or this Confirmation Order shall give, or be construed to give, this Court the power to issue any order which (without the consent of the affected party or parties) modifies or impairs any right, title, interest, privilege, or remedy expressly provided or reserved under the Plan, any security issued under or pursuant to the Plan, any Plan Document or this Confirmation Order.

31. *Substantial Consummation.* "Substantial consummation" of the Plan shall be deemed to occur on the Effective Date. "Consummation" of the Plan within the meaning of Rule 2015(a)(7) of the Bankruptcy Rules and Local Bankruptcy Rule 2015 shall not be deemed to occur until, and the Cases shall not be deemed fully administered within the meaning of Section 350(a) of the Code or the Bankruptcy Rules until, and no final decree closing the Cases shall be entered until, the Secured Notes issued under the New Credit Agreement, and all other obligations of the Proponents under the Plan shall have been paid or performed in full. Until a final decree has been entered and the Cases have been closed, as provided herein, each of the Debtors shall be, and hereby is, enjoined from filing a voluntary case under the Code. Until the Cases are closed, any party in interest may commence a proceeding in this Court in respect of any matter as to which jurisdiction has been retained herein. The retention of jurisdiction provided for in the Plan and in this Confirmation Order shall be exclusive, subject to this Court's power, under Section 305 of the Code or 28 U.S.C. § 1334(c), to abstain as to all or part of any such proceeding.

32. *Inadvertent Closing.* In the event either Case shall be inadvertently deemed closed for any purpose or fully administered before all the Secured Notes issued under the New Credit Agreement and all other obligations of the Proponents under the Plan shall have been paid or performed in full, then such Case shall be reopened on request of a party in interest pursuant to Section 350(b) of the Code and Rule 5010 of the Bankruptcy Rules and such reopening shall be deemed to be for cause.

33. *Banks Not Responsible to Other Creditors.* The Banks shall not have any responsibility for the treatment of Holders of any other Claims under the Plan, for any payments which may be required under the Plan, for any obligations of the Proponents under the Plan, or for any of the statements, actions or omissions of the Debtors, the other Proponents or any other Person with respect thereto.

34. *Bankruptcy Reports.* The reports required by Bankruptcy Rule 2015(a)(6) shall be filed by the Debtors and served on the Placid Banks and counsel for the Unsecured Creditors' Committee (a) thirty days after the Confirmation Date and (b) annually thereafter until these cases are closed as provided in paragraph 31 hereof. Such reports shall contain adequate information concerning progress made in the final and complete consummation of the Plan.

35. *Payments to Lockbox.* All Persons who are obligated to pay money to Placid in respect of production from the "Mortgaged Property" (as defined, respectively, in the Deed of Trust, Mortgage, Assignment, Security Agreement and Financing Statement and the Act of Collateral Mortgage, Collateral Chattel Mortgage, Pledge and Assignment of Production included among the Collateral Security Documents) be, and hereby are, ordered and directed to make payment thereof as provided for in the Lockbox Agreement and the Agreements In Lieu of Transfer Order contemplated therein.

36. *Continuation of Employment of Professionals.* Until the Cases are closed, the Debtors' attorneys and other professionals appointed by the Court are authorized to continue rendering all professional services necessary to carry out the terms of the Plan. Reasonable compensation for such services and reimbursement of all reasonable and necessary expenses incurred in connection therewith shall be paid only by Order of this Court after notice and hearing.

37. *Order in Recordable Form.* This Confirmation Order is hereby declared to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

38. *Release of JWIOs.* To the extent that the Joint Working Interest Owners pay one hundred percent (100%) of their share of the pre-petition Claims and such sums are paid to the Class 8b Creditors, the Joint Working Interest Owners shall be released from all liability with regard to such pre-petition Claims.

39. *Deposit of RCI Documents in Escrow.* The deposit of the RCI Documents in escrow with Thomas J. Armstrong, Esq. pursuant to Section 7.15 of the Plan be, and it hereby is, irrevocable. Neither Mr. Armstrong nor any other Person shall amend, modify or otherwise change any RCI Document that has been so deposited in escrow, except as provided in the Plan. Mr. Armstrong shall hold the RCI Documents in escrow and shall release the RCI Documents to NCNB, as agent for the Banks, upon the Bank Closing Date or as otherwise ordered by this Court.

40. *Disbursement of Bank Cash Payment.* On the Bank Closing Date, Placid shall cause the Bank Cash Payment to be paid to the Banks, as provided in Section 7.11 of the Plan.

41. *Exercise of Remedies.* If an event of default occurs as provided in any Plan Document, any of the Banks and/or NCNB as agent for the Banks may, without further order of this Court being necessary, exercise any and all rights and remedies available to them in accordance with the Plan Documents, which rights and remedies shall not, from and after the Bank Closing Date, be subject to any stay or injunction provided for by the Code and arising out of the Cases, including without limitation any stay or injunction provided for by Sections 362(a) or 1141 of the Code.

42. *Delivery of Certificate of Deposit.* On or before the Effective Date, Placid shall obtain and deliver to NCNB as agent for the Banks, the certificate of deposit referred to in clause (b) of Section 7.10 of the Plan.

43. *All Objections Overruled and Withdrawn.* To the extent such objections have not been withdrawn prior to the date hereof, all objections to confirmation of the Plan, including, without limitation, the objections filed by American International Underwriters Corporation, Ammonia Producers Partnership (AMPRO) through First Mississippi Corporation, Cooper Services, Inc., Highlands Insurance Company, Albert D. Huddleston as Next Friend for His Mi-

nor Children, Albert D. Huddleston, Mary H. Huddleston, NERCO Oil & Gas, Inc., the Creditors' Committee, Services, Equipment & Engineering, Inc., Harrison County, Harleston ISD, Denton County, Leon County, Oakwood ISD, Gary ISD, Sutton County, Sonora ISD, FM & FC, Hospital District, Water District, Anderson County, Slocum ISD, Westwood ISD, Tenneco Oil Company, Tennessee Gas Pipeline Company, the United States of America (Internal Revenue Service) and the United States of America (Mineral Management Service) be, and they hereby are, overruled, and all withdrawn objections be, and they hereby are, withdrawn with prejudice.